REED MFG. CO. v. SMITH & WINCHESTER CO. et al.

(Circuit Court of Appeals, Second Circuit. July 1, 1903.)

No. 146.

1. PATENTS—INFRINGEMENT—COLLAR IRONING MACHINE.
    The Shaw patent, No. 608,720, for a collar turning and ironing machine, adapted to turn and iron turn-down collars in a single operation, was not anticipated, and the machine is novel and useful, and shows patentable invention. Claim 1 construed, and *held* infringed by the machine of the Asher patent, No. 627,889.

Appeal from the Circuit Court of the United States for the District of Connecticut.

This cause comes here upon appeal from an interlocutory decree of the Circuit Court, District of Connecticut. The suit is for infringement of United States letters patent No. 608,720, August 9, 1898, to William C. Shaw for collar turning and ironing machine. The court held the first claim of the patent to be valid, found infringement, and decreed injunction and accounting. When the suit was begun an order for injunction pendente lite was granted. 103 Fed. 796. Upon appeal to this court we held that it was "manifest that there is presented a substantial question as to infringement, which can be settled only upon construction of the patent, and that requires a presentation of the state of the art, and a history of the invention in the Patent Office. The case would seem to be one in which preliminary injunction should not be granted without proof of prior adjudication." 107 Fed. 719, 46 C. C. A. 601.

J. P. Bartlett, for appellants.
Hugh C. Lord, for appellee.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

LACOMBE, Circuit Judge. The specification states that the invention

—"Relates to improvements in collar turning and ironing machines, and embodies mechanism for turning the rolls of turn-down collars, and for turning the tips and finishing the edge of stand-up collars; and it consists, substantially, of a vertical semicircular plate, over which the collars are turned, and grooved sad-irons adapted to move in the arcs of circles over said semicircular plate for ironing the turns of the collars thereon. Heating devices are also provided upon which the sad-irons rest when not in use. * * * From the rear of a base plate there rise two hollow upright standards, each provided with a heating-plate at the top thereof. In each of these standards there is a gas-burner, the flame from which impinges against the under side of the heating-plate. Centrally upon the base is secured an upright post, to which is secured by suitable arms a vertical semicircular plate, over the upper edge of which a collar or collar-tip may be turned. To the top of this post are pivoted two arms, having operating handles thereon, each of which arms is provided with a sad-iron, which when not in use normally rests upon a heating-plate. These sad-irons are each provided with a groove, adapted to fit over the upper edge of the vertical plate, and be swung around thereon by means of the operating handles, one only of the sad-irons being used at a time, the other meanwhile resting on its heating-plate, so that there is always a hot iron ready for use. * * * In the operation of ironing a turn-down collar after it has been ironed flat in the usual manner, it is dampened on the line upon which it is to be turned, and then turned over the edge of the semicircular plate. The operator then passes one of the grooved sad-irons back and forth over the edge of the turn in the collar upon the edge of the plate until it is ironed dry."

The patent contains four claims, of which the first only is declared upon. It reads as follows:

"(1) In a collar turning and ironing machine, the combination of a curved flange-shaped former, over which the collar is folded and curved into proper shape for wear, a grooved iron arranged opposite the former, and means for moving the grooved iron into engagement with the former, and for moving one of said parts upon the other, substantially as set forth."

It is contended by defendants that the claim is void for lack of patentable novelty. The utmost that defendants' proof establishes is summarized on the last page of their brief: "It was a very common thing to turn down and iron turn-down collars by machinery, and to set the curve into the collar by machinery." No machine, however, performing both these functions in a single operation is shown, nor is there any showing the combination of the patent. The device of Wiles and Adams patent (173,006) is for ironing collars flat only; in Wiles (258,334) there is nothing which bears on the edge which is turned over so as to iron and finish that as complainant does; Cummings (483,139 and 509,514) show a former or shaper only, not a flanged former over which the collar can be turned down and ironed; Burgess (557,766) turns the collar, but has not a curved former adapted to shape it to the neck of the wearer. It seems to be conceded that the devices which come closest to that of the patent are those of the German patent to Mindt (24,731) and the United States patent to Ryder (287,865). The Mindt patent is obscurely expressed, and it is not easy to make out just what his device is. It was held in the Circuit Court, on application for preliminary injunction, that:

"Fig. 5 of the Mindt patent shows a 'saddle-shaped' mold, whose ridges lay themselves into the depression of a heated ironing roller. It is clear from the Mindt specification that it is not, as constructed, designed to perform the function of the machine of the patent in suit. It is not clear that its scope was not merely to iron the band and the face of the collar. The specification states that it is 'not desirable to iron both parts of the collar at the same time.' Nor is it clear that this machine was not merely designed to iron new collars for the market, and not to fit laundered collars to the neck. The Mindt patent issued 15 years ago; the patent in suit appears to be a marked improvement thereon."

We concur in this statement; Mindt effects the preliminary ironing of the collar, not the shaping and ironing of the fold. The Ryder patent (287,865) is not found in the record. Appellants have reproduced Fig. 1 of the drawings in their brief. It shows a machine designed to curl and set hat-brims, and belongs to a different art.

The machine of the patent is certainly novel and useful, and we find nothing in the record which would warrant a finding that it is devoid of patentable invention.

The main contention of respondents is that their device does not infringe. That device is shown in a patent to William J. Asher, No. 627,889, June 27, 1899. Asher was in interference with Shaw, and with six others, as to the issue presented by this first claim, priority being found in Shaw. The defendants' device, as described in the Asher patent

—"Consists in a cylindrical former, over the edge of which the collar is applied and held by hand, and the cylinder is mounted upon a shaft or axis, so as to be turned around to move the collar while in contact with an iron that is pressed upon the fold thereof, and the pressure of the iron is applied by the foot, so that the hands are entirely at liberty to manipulate the collar. * * * The surfaces and upper edge [of the cylindrical former] are smooth, and adapted to receive upon them the fold of the collar, so as to support such fold while being ironed, and this cylinder, turning freely upon its axis, can be moved with the collar while presenting the same to the action of the iron. * * * The former need not be a complete cylinder, * * * but it is preferable to make it cylindrical, in order that the collar may be placed upon any portion of it; but, under any circumstances, the former, being pivoted, can be turned around, carrying with it the collar to be shaped or ironed, and the attendant is enabled to place the collar upon the former, and to manipulate the same with both hands."

The iron is "adapted to press upon the fold or edge of the collar as such collar is presented upon the cylindrical former." It is "preferably" in two parts, to allow for different thicknesses of material. When adjusted, the two parts present a substantial duplicate of the grooved sad-iron of complainant. A treadle and certain connecting parts are the means whereby the iron is brought down into engagement with the former and lifted up out of engagement therewith.

The defendants contend that this Asher device does not infringe (1) because it has no grooved iron arranged opposite the former; (2) because it has no "means" with that "duality of function which the claim requires," to wit, "means for moving the grooved iron into engagement with the former, and for moving one of said parts upon the other"; (3) because it has no "means for moving one of said parts [the 'former' and the 'grooved iron'] upon the other."

As to the first of these propositions, defendants contend that the word "opposite" must be considered as meaning that the grooved iron is not normally in the same part of the circle through which it swings as is the flanged forming-plate, but that it is in a different part of the circle—an opposite part of the circle. The word "opposite" does not occur nor is its meaning suggested in the specification. There is nothing to require a construction which would confine "opposition" to different positions in a horizontal plane, and if so confined the language of the claim would not be quite accurate, because when at rest the grooved iron is not "opposite," but "nearly opposite," the position in which it does its work. Complainant shows how the language of the claim was evolved from that used in one of the interfering applications, and that Asher on the interference accepted it as fairly covering the positions of his heated iron. But it will not be necessary to consume any time in giving a history of the interference. The natural and plain interpretation of the word is one to be based upon the functions of the parts which are brought into and out of engagement. This is well expressed by complainant's expert:

"It means that the grooved iron and the upper edge of the former are opposite in the sense that one presses in one direction upon the collar and the other sustains the collar against such pressure. The opposition of the two elements is the same opposition which is found in the ordinary operation of hand ironing, where the iron and the ironing-board are opposite in the sense that the iron is pressed downward upon the articles being ironed, and this downward pressure is opposed by the ironing-board. Such opposite elements are necessary to the operation of ironing."

When this patent was here upon the former appeal it was noted that:

"The claim sued on may be interpreted as containing either three or four elements. Complainant contends that it covers (1) the former, (2) the grooved iron, (3) means for moving the grooved iron into engagement with the former, and (4) means for moving one of said parts upon the other. Defendant contends that it covers (1) and (2) as above, and (3) means for moving the grooved iron into engagement with the former, and for moving one of said parts upon the other."

And we suggested that a history of the invention in the Patent Office would be helpful to a decision of the question. That history is set forth in the record. The phraseology of the claim was formulated in the Patent Office. It was based upon claims in an application by one Farina, who was one of the eight applicants in interference. The Farina device, like the Asher device, had distinct elementary parts for performing the two functions. It is manifest that the Patent Office did not understand the language of the claim as restricted to a single "means" with a dual function; nor did Asher, for he accepted the Patent Office formulation of the claim and took testimony in the interference proceeding. Moreover, the concluding words of the claim indicate that it is not so restricted. Had it read, "and means for moving the grooved iron into engagement with the former and for further moving said iron thereon," there would be force in defendants' suggestion. But the claim provides that after the two parts are brought into engagement the iron may be moved over

the former, or the former moved under the iron. The means which brings the parts into engagement is, necessarily, by the language of the claim, means acting upon the iron. If, after engagement is effected, the iron is to be stationary while the former moves, the means for moving must be "means" acting upon the former and not upon the iron. We are clearly of the opinion that the claim contains four elements. This disposes of the second proposition (supra) against infringement.

The only remaining question is whether defendants' device has means "for moving one of said parts upon the other." When engagement has been effected by operating the treadle, and thus bringing down the iron upon the former, the operator takes hold of the circular former with his hands, grasping a part of it not required for the ironing process, and moves it under the iron. Defendants' argument is that the use of the human hand is not an equivalent of an element of a machine; but they overlook the fact that it is not the human hand alone that effects the particular movement desired. If the former were free in space, as a common iron is when used on an ironing-board, there would be no "means," within the language of the claim. But it is not free; mechanism so controls it that it moves in just the way required, and the hand merely applies the power, as the foot does when engagement is effected in defendants' machine. The mechanical means for moving after engagement is effected are substantially identical in both devices. In the complainant's the movable iron is affixed at the extremity of a rigid arm, which is pivoted to an upright so that it can swing in a horizontal plane, when an impulse to move is imparted by the hand. That impulse is imparted through a handle, but it might be given equally without the handle, the rigid arm, or even the iron itself, being grasped; but that would be inconvenient, for the iron is the heated member of the combination. In defendants' device (in which the iron, once in engagement, is stationary) the movable circular flange is affixed at the extremity of four rigid arms, which are pivoted to an upright, so that they can swing in a horizontal plane (carrying the flange with them), when an impulse to move is imparted by the hand.

We are entirely satisfied that defendants' device infringes the first claim of the patent.

Decree of Circuit Court affirmed, with costs.